

# Notice of Service of Process

null / ALL
Transmittal Number: 12546305
Date Processed: 05/21/2014

| | |
|---|---|
| **Primary Contact:** | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE 19808 |
| **Entity:** | Wells Fargo Bank, National Association<br>Entity ID Number  2013649 |
| **Entity Served:** | Wells Fargo Bank, N.A. |
| **Title of Action:** | Troy K. Wride vs. Wells Fargo Bank, N.A., a national association, d.b.a. Wells Fargo Home Mortgage |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Utah County District Court, Utah |
| **Case/Reference No:** | 140400711 |
| **Jurisdiction Served:** | Utah |
| **Date Served on CSC:** | 05/20/2014 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Bradley J. Weber<br>801-753-8084 |
| **Client Requested Information:** | Matter Management User Groups: [LITIGATION - EMPLOYEE] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

BRADLEY J. WEBER (USB No. 12273)
R. BRETT EVANSON (USB No. 12086)
**EVANSON WEBER, P.L.L.C.**
2975 W. Executive Parkway, Suite 201
Lehi, UT 84043
Telephone: (801) 753-8084
Facsimile: (801) 407-1639
Email: brad@evansonweber.com
brett@evansonweber.com
*Attorneys for Plaintiff*

## IN THE FOURTH JUDICIAL DISTRICT COURT, UTAH COUNTY, PROVO DEPARTMENT, STATE OF UTAH

| | |
|---|---|
| TROY K. WRIDE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a national association, d.b.a. WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | **SUMMONS**<br><br><br>Case No. 140400711<br><br>Judge Thomas Low |

STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

    Wells Fargo Bank, N.A.
    c/o Corporation Service Company
    2180 South 1300 East, Suite 650
    Salt Lake City, UT 84106

    You are hereby summoned and required to file with the Clerk of the Fourth District Court, located at 125 North 100 West, Provo, UT 84601, a written Answer to the Complaint, and to serve upon or mail to Plaintiffs' attorney, at the address shown above, a copy of your Answer

within twenty (20) days after service of this Summons upon you.

If you fail to so answer, judgment by default will be taken against you for the relief demanded in the Complaint, which has been filed with the Clerk of the above Court and a copy of which is attached and herewith served upon you.

DATED AND SIGNED this 19th day of May, 2014.

**EVANSON WEBER, P.L.L.C.**

/s/ Bradley Weber
Bradley J. Weber
R. Brett Evanson
*Attorneys for Plaintiff*

BRADLEY J. WEBER (USB No. 12273)
R. BRETT EVANSON (USB No. 12086)
**EVANSON WEBER, P.L.L.C.**
2975 W. Executive Parkway, Suite 201
Lehi, UT 84043
Telephone: (801) 753-8084
Facsimile: (801) 407-1639
Email: brad@evansonweber.com
　　　　brett@evansonweber.com
*Attorneys for Plaintiff*

## IN THE FOURTH JUDICIAL DISTRICT COURT, UTAH COUNTY, PROVO DEPARTMENT, STATE OF UTAH

| | |
|---|---|
| TROY K. WRIDE, an individual, | **COMPLAINT** |
| Plaintiff, | |
| vs. | |
| WELLS FARGO BANK, N.A., a national association, d.b.a. WELLS FARGO HOME MORTGAGE, | Case No. 140400711 |
| | Judge Thomas Low |
| Defendant. | |

COMES NOW Plaintiff Troy K. Wride, by and through counsel of the law firm EVANSON WEBER, PLLC, and for causes of action against Defendant Wells Fargo Bank, N.A., doing business as Wells Fargo Home Mortgage, hereby alleges, avers, and complains as follows:

### PARTIES, JURISDICTION, AND VENUE

1.　　Plaintiff Troy K. Wride ("Plaintiff" or ""Mr. Wride") is, and at all times material hereto has been, an individual residing in Utah County, State of Utah.

2.　　Defendant Wells Fargo, N.A. dba Wells Fargo Home Mortgage ("Defendant" or "Wells

Fargo") is, and at all times material hereto has been, a national banking association which is an employer in Utah County, State of Utah.

3. Utah County is the location where Plaintiff's causes of action arise.

4. Jurisdiction in this Court is proper pursuant to UTAH CODE ANN. §§ 78A-5-102 and 78B-3-201 *et seq.*

5. Venue is proper before this Court pursuant to UTAH CODE ANN. §§ 78B-3-304 and 307.

## GENERAL ALLEGATIONS

6. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

7. Plaintiff Mr. Wride was hired on or about September 10, 2012 as a Loan Doc Specialist ("Processor"), and his employment had been continuous until his termination on or about April 8, 2014.

8. Mr. Wride consistently received good performance reviews from his managers and supervisors, was a top Processor in the region, and received the service excellence award for the fourth quarter of 2013.

9. In or about December 2013, Mr. Wride was informed that an Area Processing Manager ("APM") position became available, and Mr. Wride decided to apply for the position.

10. Mr. Wride interviewed for the APM position with several managers, including Patricia Sugamele[1], Susan C. Nolan[2], and Mason Faulk[3].

11. During this interview process, Mr. Faulk inquired whether Mr. Wride had any interest in

---

[1] Ms. Sugamele is a Regional Processing Manager.
[2] Ms. Nolan is the Utah Area Processing Manager.
[3] Mr. Faulk is the Utah Area Sales Manager.

a Home Mortgage Consultant ("HMC") position.

12. In or about January 2014, Mr. Wride was informed that another candidate was selected for the open APM position.

13. Shortly thereafter, Daniel A. Taylor[4] approached Mr. Wride several times to consider an HMC position.

14. In or about late February 2014, Wells Fargo experienced significant HMC turnover in the region, and Mr. Taylor once again approached Mr. Wride about transitioning to an HMC position.

15. Mr. Wride discussed the HMC position with Mr. Taylor, and Mr. Wride made it expressly clear that he would only consider the transition to an HMC if: (1) Wells Fargo would provide a four (4) month guaranteed salary ensuring Mr. Wride would earn approximately the same income as his previous position as a Processor; and (2) Wells Fargo would not require Mr. Wride to re-pass his background and credit checks previously completed when he was originally hired in September 2012.

16. Mr. Wride had concerns about his background and credit checks in February 2014 because he recently completed a very acrimonious and drawn-out divorce process which had devastating effects on his credit.

17. By applying for the HMC position, he did not want to jeopardize his current employment as a Processor whatsoever—and Mr. Wride expressed these concerns directly to Mr. Taylor.

---

[4] Mr. Taylor is the Sales Manager in Orem, Utah.

18. Mr. Taylor conveyed Mr. Wride's concerns to Kim A. Morris[5], Mr. Faulk, and Susan Walker, and discussed with them whether these concerns could be assuaged.

19. After a few days, Mr. Taylor informed Mr. Wride that Ms. Morris, Mr. Faulk, and Ms. Walker indicated that Mr. Wride's had nothing to worry about and he could move forward with the application process.

20. Mr. Taylor and Mr. Faulk informed Jenifer Linton, Ms. Nolan, and Ms. Sugamele of the decision, and everyone agreed that Mr. Wride's transition to HMC would be effective March 17, 2014.

21. Mr. Taylor provided Mr. Wride with an offer letter dated February 26, 2014 (the "Offer"), which confirmed the 4-month guarantee and five (5) months of top-tier commission percentages, along with a $1,500.00 signing bonus after the expiration of 4 months contingent upon Mr. Wride generating an average of $1.5 million dollars in volume each month for the first 4 months.

22. According to the Offer, the effective date as an HMC was March 10, 2014.

23. Prior to accepting the HMC offer, Mr. Wride once again requested from Mr. Taylor to re-verify with Ms. Morris and Mr. Faulk that Mr. Wride e would not be required to undergo a renewed background and/or credit check.

24. Mr. Taylor informed Mr. Wride that Ms. Morris and Mr. Faulk reconfirmed everyones' understanding that because Mr. Wride was already a current employee of Wells Fargo, all it would take is a click-of-a-button and the transfer of Mr. Wride's NMLS number (from his

---

[5] Ms. Morris is the Administrative Assistant in Sandy, Utah.

previous employer) would complete his transition to the HMC position.

25. Mr. Wride signed the Offer on March 13, 2014.

26. On March 17, 2014, Mr. Wride transitioned to an HMC and began working in those duties.

27. However, Mr. Wride continued to wait for Wells Fargo to complete the process of obtaining his NMLS number.

28. In the interim, Mr. Wride completed all required trainings, and started accepting leads from other branch managers and communicating with potential customers—and Mr. Wride decided to purchase a new home with his fiancé based on the income potential of his new HMC position.

29. On or about May 29, 2014, Mr. Wride received an email concerning his background check and financial fitness credit check; upon receipt, Mr. Wride immediately informed Mr. Taylor about the email.

30. Mr. Taylor once again confirmed his understanding, and he immediately called Ms. Morris and Mr. Faulk.

31. Ms. Morris and Mr. Faulk informed Mr. Taylor that the email received by Mr. Wride must have been sent by mistake.

32. Ms. Morris sent an email to Tasha Ford[6] inquiring about the email sent to Mr. Wride.

33. In response, Ms. Ford informed Ms. Morris for the first time that a new background check and financial fitness credit check would be required because of new financial reform laws

---

[6] Ms. Ford is a Recruiter for Wells Fargo.

and regulations that went into effect in January 2014.

34. This came as a complete shock to Mr. Wride and his supervisors because it was in direct contradiction to the information upon which Mr. Wride relied when he made his decision to transition to the HMC position.

35. Ms. Ford further indicated that there are no exceptions to the new requirements, but that Mr. Wride should not worry because he was already a Wells Fargo employee.

36. Ms. Ford and Ms. Morris informed Mr. Taylor and Mr. Wride that they should not be concerned about this development.

37. Mr. Taylor, Ms. Morris, and Mr. Faulk decided Mr. Wride would continue working in his new HMC role and informed him of that decision.

38. On or about March 24, 2014, Mr. Wride received an email from the Financial Fitness Team ("FFT") requesting further explanation about items on his credit report.

39. Mr. Wride provided detailed responses to the FFT inquiries, explaining that the issues were related to his previous divorce.

40. On or about March 26, 2014, Brian C. Smith[7] contacted Mr. Wride, indicating that he needed Mr. Wride's permission and authorization to run his credit check for financial fitness.

41. Mr. Wride explained to Mr. Smith that he already received and responded to an email from FFT about the issues.

42. Mr. Smith was surprised about this, and informed Mr. Wride that he would contact him at a later time.

---

[7] Mr. Smith is an Employee Relations Consultant.

43. Mr. Wride was informed that the SAFE results were satisfactory and his NMLS number was transferred to Wells Fargo.

44. In all ways, Mr. Wride was ready to work as an HMC: his website was operational, along with business cards, name plates, etc.

45. During this time, an HMC opening became available at the Meadows Branch in Lehi, Utah, and Mr. Wride received permission from Mr. Taylor to work from that branch office.

46. Mr. Wride began working at the Meadows Branch under the direction of Kyle Thompson.

47. From his first day at the Meadows Branch, Mr. Wride received several referrals, and Mr. Thompson informed other neighboring branches about Mr. Wride's relocation.

48. In a matter of a few days, Mr. Wride amassed approximately $4,000,000.00 in volume from these branches of customers that were either 3-step eligible, HARP eligible, seeking refinance, and/or new purchases.

49. On or about March 29, 2014, Mr. Wride received another telephone call from Mr. Smith informing him that he did not pass the financial fitness portion of the background check—and Mr. Wride would not be permitted to continue to work as as HMC with Wells Fargo.

50. Mr. Wride requested information to contest the decision, and Mr. Smith stated that there was nothing that could be done.

51. Mr. Smith had already spoken with Mr. Taylor and Ms. Linton, and that he had asked Ms. Linton if she would allow Mr. Wride to transition back to her team again as a Processor.

52. Ms. Linton told Mr. Smith that her team would like to have Mr. Wride back in his

previous position, which had not yet been filled.

53. Mr. Smith assured Mr. Wride that he would be allowed to return to his Processor job or he would be permitted to take a ninety (90) day paid leave to search for other employment.

54. Mr. Wride expressed his frustration and displeasure for the outcome, but elected to return to his Processor position since he needed the income immediately.

55. Mr. Wride contacted Ms. Linton and Ms. Sugamele a few days thereafter, and they informed him that Mr. Smith had not contacted them.

56. They also expressed concern to Mr. Wride that Mr. Smith may not be able to return him to his previous position.

57. Mr. Wride made numerous attempts to reach Mr. Smith via email and telephone.

58. On or about April 3, 2014, Mr. Smith contacted Mr. Wride by telephone, informed Mr. Wride that he was wrong and Wells Fargo would not permit Mr. Wride to return to his Processor role, and Mr. Wride's only option was to accept the 90-day paid leave to find another job.

59. Mr. Smith telephoned Mr. Wride the next day to inform him that the 90-day leave would actually be *unpaid*.

60. Mr. Wride was informed that Wells Fargo was undertaking a review of the situation, and that he would be contacted shortly.

61. On or about Friday, April 25, 2014, Elise Reiser[8] contacted Mr. Wride to inform him that Wells Fargo handled his employment situation in compliance with applicable regulations.

62. When Mr. Wride expressed his disagreement, Ms. Reiser extended an offer on behalf of

---

[8] Ms. Reiser is an Employee Relations Manager for Wells Fargo Consumer Lending group.

Wells Fargo to settle the matter according to the following basic terms: (1) Mr. Wride's unpaid job search leave was scheduled to end on or about July 8, 2014; (ii) in lieu of continuing on the unpaid job search leave, Mr. Wride was offered the option of voluntarily resigning his employment effective May 1, 2014 and receiving a lump sum settlement payment; and (iii) Mr. Wride would be required to execute a departure agreement.

63.   Ms. Reiser informed Mr. Wride that the deadline to accept the offer was May 1, 2014.

64.   On Tuesday, April 29, 2014, Ms. Reiser sent an email to Mr. Wride containing a cover letter that confirmed the basic terms of the offer along with a copy of the written *Departure Agreement and Release of Claims* (the "Proposed Agreement").

65.   According to the Proposed Agreement, Mr. Wride's last day of work at Wells Fargo was April 8, 2014 after which he commenced a 90-day unpaid job search leave.

66.   The Proposed Agreement would require, among other things, Mr. Wride to agree to strict confidentiality, non-disparagement, and non-disclosure provisions.

67.   The Proposed Agreement was not definitive regarding Mr. Wride's employee benefits after his departure, but rather referred him to contact Wells Fargo's HR Service Center via telephone for additional information.

68.   Mr. Wride retained legal counsel, who prepared and sent a counterproposal to Ms. Reiser via email on May 1, 2014.

69.   Neither Mr. Wride nor his attorney received a response from Wells Fargo.

/ /

/ /

### FIRST CAUSE OF ACTION
### (Breach of Contract)

70. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

71. Plaintiff and Defendant entered into a valid and enforceable employment contract pursuant to the facts and the parties' actions set forth herein.

72. Plaintiff fully performed all of his obligations pursuant to the terms of the contract.

73. Defendant breached the contract by failing to perform on the contract.

74. As a result of Defendant's breaches, Plaintiff has been damaged in an amount of at least $100,000.00 to be proven at trial plus interest, costs and reasonable attorney's fees.

### SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

75. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

76. Inherent to every contract in the State of Utah is the Covenant of Good Faith and Fair Dealing, requiring the parties to a contract to perform the obligations required by their contract in good faith.

77. Plaintiff and Defendant entered into a valid and enforceable contract pursuant to the facts and the parties' actions set forth herein.

78. Implied in the contract was a covenant by which Defendant promised to not intentionally do anything to injure Plaintiff's right to receive the benefits of the contract.

79. Plaintiff relied in good faith on the representations and assurances made by Defendant's supervisors and managers.

80. Plaintiff has performed all duties required of him in good faith pursuant to the terms of

the contract, and has placed Defendant in a position to realize the benefits and fruits of the contract.

81. Defendant breached this covenant by failing to deal with Plaintiff in good faith.

82. As a result of Defendants' breach, Plaintiff has been damaged in the amount of at least $100,000.00 to be proven at trial plus interest, attorney's fees, and collection costs accruing thereafter.

### THIRD CAUSE OF ACTION
### (Fraudulent Inducement / Fraudulent Misrepresentation)

83. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

84. Defendant, though its authorized managers and supervisors, made false representations to Plaintiff concerning presently existing facts.

85. These false representations include, but are not limited to, the representations that: (i) Plaintiff was not required to once again undergo and pass background, credit, and/or finance fitness checks as a condition of employment as an HMC; and (ii) Plaintiff could continue his employment as Processor if he applied for and/or accepted the HMC position.

86. Defendant had no intention of performing on these representations at the time they were made because new financial reform laws and regulations did not allow Mr. Wride to work as an HMC.

87. Defendant knew these representations were false, or made them recklessly, knowing there was insufficient knowledge upon which to base such representations.

88. Defendant, though its authorized managers and supervisors, made these representations

for the purpose of inducing Plaintiff to act thereon.

89. Plaintiff, acting reasonably and in ignorance of their falsity, relied upon these representations and was induced to act thereupon by applying for the HMC position, accepting the HMC position, and actually transitioning to and working as an HMC.

90. Plaintiff's reliance on these representations is reasonable because Defendant was the more sophisticated, experienced, and better-informed party as to the qualifications and requirements to work as an HMC pursuant to applicable regulations and their application to Plaintiff.

91. Defendant's conduct has resulted in Plaintiffs being injured and damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

92. Plaintiffs hereby incorporate and re-allege all previous paragraphs of this Complaint as though fully set forth herein.

93. Defendant had a pecuniary interest in Plaintiff filling the vacant HMC position so that Defendant would not lose the volume of mortgages.

94. Defendant was in a superior position to know the material facts concerning whether, for example, Plaintiff would qualify to work as an HMC and/be be permitted to go back to his previous position as a Processor.

95. Defendant, through its authorized managers and supervisors, carelessly or negligently made false representations of material fact to Plaintiff when it represented that: (i) Plaintiff was

not required to once again undergo and pass background, credit, and/or finance fitness checks as a condition of employment as an HMC; and (ii) Plaintiff could go back to his employment as a Processor if for some reason the HMC position did not work after applying for and/or accepting the HMC position.

96. Plaintiff reasonably relied on these representations because of the superior knowledge of Defendant as Plaintiff's supervisors and managers in applicable matters.

97. Plaintiff reasonably relied on these representations when he applied for the HMC position, accepted the HMC position, and actually transitioned to and worked as an HMC.

98. Defendant should have reasonably foreseen that Plaintiff was likely to rely upon these representations, and Defendant has knowledge that Plaintiff actually did rely on these representations.

99. Plaintiff has been injured and/or damaged because of their reasonable reliance on Defendant's misrepresentations.

### FIFTH CAUSE OF ACTION
### (Promissory Estoppel and/or Detrimental Reliance)

100. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

101. Defendant extended a valid offer to Plaintiff, which Plaintiff accepted in writing.

102. Plaintiff reasonably relied on the representations of Defendant's authorized managers and supervisors that: (i) Plaintiff was not required to once again undergo and pass background, credit, and/or finance fitness checks as a condition of employment as an HMC; and (ii) Plaintiff could go back to his employment as a Processor if for some reason the HMC position did not work

after applying for and/or accepting the HMC position.

103. Plaintiff actually relied on the representations when he applied for the HMC position, accepted the HMC position, and actually transitioned to and worked as an HMC.

104. Plaintiff has been damaged in an amount to be determined at trial because of his reasonable reliance on Defendant's representations.

105. As a result, Plaintiff is entitled to the equitable remedy of restitution in an amount to be proven at trial.

## TIER ELECTION

106. Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

107. Due to the amount of damages pled in this Complaint, this is a Tier 3 case pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Troy K. Wride prays the Court for judgment against Defendant Wells Fargo Bank, N.A., doing business as Wells Fargo Home Mortgage for the following:

i. For a determination that Defendant is liable for breach of contract;

ii. For a determination the Defendant breached the implied covenant of good faith and fair dealing;

iii. For a determination that Defendant is liable for fraudulent inducement and/or misrepresentation;

iv. For a determination that Defendant is liable for negligent misrepresentation;

v.     For a determination that Defendant is liable for promissory estoppel and/or detrimental reliance;

vi.    That Plaintiff be awarded the damages in an amount of at least $100,000.00 in an amount otherwise to be proven at trial, together with interest accruing thereon at the statutory rate from the date of this filing until paid in full, before and after judgment;

vii.   For an award of Plaintiff's attorney's fees and costs; and

viii.  For such other and further relief that the Court deems appropriate.

DATED AND SIGNED this 19th day of May, 2014.

**EVANSON WEBER, P.L.L.C.**

/s/ Bradley Weber
Bradley J. Weber
R. Brett Evanson
*Attorneys for Plaintiff*