SCOTT A. HAGEN (4840)
AARON K. OLSEN (14273)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
   Telephone: (801) 532-1500
   shagen@rqn.com
   aolsen@rqn.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TROY K. WRIDE, an individual,<br><br>                Plaintiff,<br><br>         v.<br><br>WELLS FARGO BANK, N.A., a national association, d.b.a. WELLS FARGO HOME MORTGAGE,<br><br>                Defendant. | **MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Civil No. 2:14-cv-00451-PMW<br><br>Magistrate Judge Paul M. Warner |

        Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Wells Fargo

Bank, N.A. ("Wells Fargo") submits this Motion for Judgment on the Pleadings as to all Plaintiff

Troy Wride's ("Wride") claims.

## TABLE OF CONTENTS

RELIEF SOUGHT ................................................................................................. iv

INTRODUCTION ................................................................................................ iv

BACKGROUND FACTS ..................................................................................... vi

ARGUMENT ........................................................................................................1

    I.    STANDARD OF REVIEW. ...................................................................1

    II.    WRIDE'S CLAIM FOR BREACH OF CONTRACT FAILS BECAUSE HE DOES NOT ALLEGE A SUFFICIENTLY DEFINITE CONTRACT AND ANY EMPLOYMENT CONTRACT BETWEEN WRIDE AND WELLS FARGO WAS QUALIFIED BY THE AT-WILL PRESUMPTION. ..................................................................................2

        A.    Wride Does not Specify the Terms of Any Contract Between Him and Wells Fargo, nor Which Alleged Provision Wells Fargo Allegedly Breached. ................................................................. 2

        B.    Any Employment Contract Between Wride and Wells Fargo Was Terminable at Will. ...................................................................... 3

    III.    WRIDE'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ALSO FAILS BECAUSE THE IMPLIED COVENANT ALONE CANNOT BE READ TO OVERCOME THE AT-WILL PRESUMPTION. ........................................................7

    IV.    WRIDE'S CLAIM FOR FRAUD FAILS BECAUSE WELLS FARGO HAD NO PRESENT INTENTION TO DEFRAUD WRIDE AND ANY ALLEGED REPRESENTATIONS BY WELLS FARGO WERE NOT THE CAUSE OF INJURY TO WRIDE. ...................................................9

        A.    Wride Does not Adequately Allege That Wells Fargo Had a Present Intent to Defraud Wride. ............................................... 9

        B.    Wells Fargo's Alleged Promise That Wride Could Return to His Specialist Job Induced No Action on Wride's Part. ................................ 10

        C.    Wride's Actions in Reliance on Wells Fargo's Alleged Promises Caused No Injury to Wride. ................................................... 11

V.     WRIDE'S CLAIM FOR NEGLIGENT MISREPRESENTATION FAILS BECAUSE THE ECONOMIC LOSS RULE PREVENTS RECOVERY OF WAGES FOR NON-INTENTIONAL TORTS.................................................13

VI.    WRIDE'S CLAIM FOR PROMISSORY ESTOPPEL FAILS BECAUSE HE DOES NOT ALLEGE THAT WELLS FARGO MADE A PROMISE OF CONTINUED EMPLOYMENT SUFFICIENT TO OVERCOME AT-WILL PRESUMPTION.........................................................................................14

CONCLUSION..............................................................................................................17

**RELIEF SOUGHT**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Wells Fargo hereby moves this Court to dismiss all of Plaintiff Troy Wride's claims and causes of action against Defendant.

**INTRODUCTION**

In the hope of avoiding future turmoil in financial markets, Congress and federal agencies have enacted a significant body of laws and regulations on the administration of financial institutions, such as Wells Fargo. Some of these regulations restrict individuals with bad credit histories from holding certain positions in financial institutions. Ever-changing regulations are imposing many changes on the financial services industry and also influencing the lives and careers of countless individuals who make a living in the industry.

Wride is an example of one who has been forced to change by changing regulations. He had been working for Wells Fargo for a couple of years and was told of a new opportunity as a Home Mortgage Consultant ("HMC"). Wride knew he would probably fail a credit check for this position because of red flags on his recent financial history, but some Wells Fargo employees told him that they believed a credit check was not necessary. However, as Wride and these employees were all "shock[ed]" to discover (Compl. ¶ 34), brand new regulations would in fact require a credit check.[1] Wride failed the credit check, as he expected, and therefore could

---

[1] New regulations prohibited financial institutions from employing loan originators who were not able to "demonstrate[] financial responsibility, character, and general fitness such as to warrant a determination that the individual loan originator will operate honestly, fairly, and efficiently." 12 C.F.R. § 1026.36(f)(3)(ii)(B). These new regulations went into effect January 10, 2014.

not hold the HMC position.  In an effort to be helpful, one Wells Fargo employee told Wride that he would be able to return to his former position.  However, this employee found that he was wrong and that the new regulations would not permit Wride to return to the former position either.  Despite Wells Fargo's best efforts to accommodate Wride, the combination of Wride's negative financial history and changing federal regulations did not permit Wride to serve in either position.  Wells Fargo put Wride on leave to allow him to search internally for another job, but Wride shortly brought this lawsuit instead.

Wride now seeks to hold Wells Fargo responsible for new regulations which will not permit him to serve in certain financially responsible positions because of his bad credit.  Despite the fact that Wride's own narrative shows Wells Fargo did its best to work with him, he now claims that it defrauded him and acted in bad faith, among other things.  However, Wride was an at-will employee, which negates some of his claims.  Moreover, Wells Fargo acted in compliance with applicable regulations in denying these positions to him, and caused him no legally cognizable injury through its statements or actions.  As a matter of equity and fairness, Wells Fargo should not be made to pay where new regulations and Wride's own financial unfitness disqualified him from certain positions in the financial industry; as a matter of law, all of Wride's claims fail because he is unable to allege the necessary elements of the causes of actions he brings against Wells Fargo.

## BACKGROUND FACTS[2]

1.      Wride was hired by Wells Fargo on or about September 10, 2010 as a Loan Document Specialist ("Specialist").  (Compl. ¶ 7.)

2.      He worked this position until Daniel Taylor ("Taylor"), sales manager for Wells Fargo, informed Wride of an open position as a Home Mortgage Consultant ("HMC"), and Wride applied for that job in or around February 2014.  (Compl. ¶¶ 13-14, 21.)

3.      After consulting with other Wells Fargo employees, Taylor told Wride that Wride would not need to have a background or credit check as part of his application for HMC. (Compl. ¶¶ 19, 23-24.)

4.      Wride was concerned about having a background and credit check performed since recent events in his personal life "had devastating effects on his credit."  (Compl. ¶ 16.)

5.      Wride began working as an HMC on March 17, 2014.  (Compl. ¶ 26.)

6.      In March 2014, Wells Fargo told Wride that he actually would have to undergo a background and credit check because of new financial reform laws and regulations that went into effect January 2014.  (Compl. ¶ 33.)

7.      Learning that these new legal requirements would require the background/credit check "came as a complete shock to Mr. Wride and his supervisors."  (Compl. ¶ 34.)

---

[2] Wells Fargo includes the following facts as taken from Wride's Complaint and accepts them only for purposes of this Motion.

8.      Later in March 2014, Brian Smith ("Smith"), a Wells Fargo employee, informed Wride that he had not passed the credit check and that he could not continue as an HMC. (Compl. ¶ 49.)

9.      Smith then inquired into whether Wride would be allowed to return to his Specialist position.  (Compl. ¶ 51.)  When Wride's previous supervisor said she would accept him back in that position, Smith told Wride that he could return to his Specialist position. (Compl. ¶ 53.)

10.      A few days later, Smith "informed Mr. Wride that he was wrong" and that Wride would not be able to return to the Specialist position.  (Compl. ¶ 58.)

<u>**ARGUMENT**</u>

**I.   STANDARD OF REVIEW.**

Review of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or 12(c) requires a court to "accept all the well-pleaded allegations of the complaint as true and . . . construe them in a light most favorable to the plaintiff."  *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1997) (citations omitted); *see Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("We use the same standard when evaluating 12(b)(6) and 12(c) motions.")  However, a court must also "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009.  In determining facial plausibility, courts "disregard conclusory statements," *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012, and need not accept as true legal conclusions, *see Iqbal*, 556 U.S. at 678.  Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks and brackets omitted).

Accepting Wride's allegations in the Complaint as true and construing them in a light most favorable to him, Wride fails to adequately plead his claims according to this standard, as explained below.  The Court must therefore dismiss Wride's claims against Wells Fargo.

## II. WRIDE'S BREACH OF CONTRACT CLAIM FAILS BECAUSE HE DOES NOT ALLEGE A SUFFICIENTLY DEFINITE CONTRACT AND ANY EMPLOYMENT CONTRACT WAS QUALIFIED BY THE AT-WILL PRESUMPTION.

### A. Wride Does not Specify the Terms of Any Contract Between Him and Wells Fargo, nor Which Alleged Provision Wells Fargo Allegedly Breached.

Wride claims that he and Wells Fargo "entered into a valid and enforceable employment contract" and that Wells Fargo breached that contract by "failing to perform on the contract." (Compl. ¶¶ 71, 73.)  In the first place, such an allegation is too indefinite to survive dismissal. Wride does not attach a copy of any "employment contract" to his Complaint, nor does he define this contract anywhere in the Complaint or specify any terms of this contract, including what specific terms he alleges Wells Fargo breached.

In an action for breach of contract, the plaintiff must allege that there was a contract between the parties. *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14.  The federal pleading standard requires a plaintiff to plead "sufficient factual matter . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In pleading a contract claim, it is axiomatic that the plaintiff must "allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated" to avoid dismissal of the claim.  *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 12-CV-3492 KAM, 2014 WL 1310345 (E.D.N.Y. Mar. 27, 2014) (internal quotation marks omitted).  A properly pled breach of contract claim must provide "fair notice of what the . . . claim is, and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Stender v. Gerardi*, 2008 U.S. Dist. LEXIS 83151, at *39-40 (D. Colo. Sept. 30, 2008) (dismissing breach of contract claim for failure to state a claim where plaintiff did not

plead contract terms with sufficient particularity); *Connolly v. Mitsui O.S.K. Lines (Am.), Inc.*, 2007 U.S. Dist. LEXIS 86490, at *10 (D.N.J. Nov. 21, 2007) (dismissing breach of contract claim for failure to state a claim where a plaintiff "fails to allege or submit any contractual terms in her" complaint); *Parrish v. NFL Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) (dismissing complaint where, among other things, "[c]opies of any agreements actually signed by plaintiffs, or recitations of terms contained therein, [were] conspicuously absent from the complaint").

The only definition Wride gives to his alleged "employment contract" with Wells Fargo is that it was "pursuant to the facts and parties' actions set forth herein."  (Compl. ¶ 71.)  This definition of a contract is too ambiguous and uncertain to meet the requisite pleading standard. Wride's Complaint contains many alleged statements by many different individuals—but Wride nowhere specifies which, if any, of these statements constituted the so-called "employment contract" between Wride and Wells Fargo.  This failure to point out the essential terms of the alleged "employment contract" and the specific terms allegedly breached by Wells Fargo is a failure to give "fair notice" to Wells Fargo of the substance and grounds of Wride's claim. *Erickson*, 551 U.S. at 93.  Without providing more definition to what he alleges to be the employment contract between the parties and which provisions of that contract Wells Fargo allegedly breached, Wride's breach of contract claim lacks the definiteness required to survive dismissal.

**B.      Any Employment Contract Between Wride and Wells Fargo Was Terminable at Will.**

Even if Wride had pled a sufficiently definite contract so as to put Wells Fargo on notice of its purported wrongdoing, Wride does not plead anywhere in the Complaint that such an

employment contract contained promises of employment for a specified duration of time.  Since

Utah law presumes that employment contracts are terminable at will, absent specific provisions

to the contrary, any employment contract between Wride and Wells Fargo would have been

subject to the at-will presumption.  Therefore, any action taken by Wells Fargo to terminate

Wride's employment could not have been a breach of such contract.

Utah law presumes that, in the absence of agreements to the contrary, all employment

relationships are terminable by either party at will.  *See Touchard v. La-Z-Boy Inc.*, 2006 UT 71

¶ 3 ("Under Utah law, all employment relationships entered into for an indefinite period of time

are presumed to be at-will" (internal quotation marks omitted)).  Such "[a]n at-will employment

arrangement allows either the employer or the employee to terminate the employment *for any*

*reason, or no reason at all, at any time*."  *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 400

(Utah 1998 (emphasis added).  Under Utah's at-will presumption, "an employer's decision to

terminate an employee is presumed to be valid."  *Touchard*, 2006 UT 71 at ¶ 3.  A discharged

employee may rebut this presumption by showing that "the parties expressly or impliedly

intended a specified term or agreed to terminate the relationship for cause alone."  *Berube v.*

*Fashion Centre*, 771 P.2d 1033, 1044 (Utah 1989).  Evidence of this intention can take the form

of "employment manuals, oral agreements, and all circumstances of the relationship which

demonstrate the intent to terminate only for cause or to continue employment for a specified

period."  *Id.*  In determining whether an implied contract has been created, the Utah Supreme

Court has stated:

> For an implied in fact contract term to exist, it must meet the requirements for an offer of a unilateral contract.  There must be a manifestation of the employer's intent that is communicated to the employee and *sufficiently definite to operate as a contract provision*.  Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991) (emphasis added).

Wride has not alleged facts necessary to meet this standard.  In fact, Wride does not even allege that any employment contract with Wells was anything other than at-will.  He does not allege any statement that guaranteed employment to Wride for a specified term or that limited the parties' ability to terminate their relationship.[3]  Although Wride alleges that Wells Fargo employees told him a background/credit check would not be necessary for the HMC job, no part of these alleged statements included any promise to keep him in the HMC job for a period of time if a background/credit check were performed.  Accordingly, these alleged statements do not represent a "manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision."  *Id.*

As to alleged promises that Wride could return to the Specialist job, if he claims that such a promise formed part of the "employment contract," Wride's allegations are likewise not "sufficiently definite to operate as a contract provision" to overcome the at-will presumption.  *Id.*  Again, Wride does not allege that Wells Fargo promised he could return to the Specialist job for a certain period of time, or that Wells Fargo placed any other restrictions on its ability to remove him from the Specialist position.  Any alleged promise to return Wride to the Specialist position was thus subject to the at-will presumption.

---

[3] Wride states in paragraph 15 of the Complaint that he would only apply to the HMC position if "Wells Fargo would provide a four (4) month guaranteed salary . . . ," but he never alleges that Wells Fargo accepted this condition or offered any other promise of a definite term of employment.

Although Wells Fargo rescinded its offer to return him to the Specialist position, this could not have been a breach of contract.  Since the nature of at-will employment is that it can be terminated at any time for any reason, the rescission of an offer of at-will employment cannot provide grounds for a breach of contract.  *See, e.g., White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1215 (D.S.C. 1992) (granting summary judgment on breach of contract claim and stating "[w]hen an employer has the right to terminate at will, it may do so at any time, including the period after the employee has accepted an offer but before the employee begins work"); *Murtagh v. Emory Univ.*, 152 F. Supp. 2d 1356, 1366 (N.D. Ga. 2001) (citing numerous cases in other jurisdictions which held that rescission of a promise of at-will employment cannot form grounds for a breach of contract and concluding that "plaintiff cannot state a claim for breach of contract in Georgia where the position allegedly promised was for no specified or guaranteed period of time."); *Petitte v. DSL.net, Inc.*, 925 A.2d 457, 463 (2007) (holding same and stating "[a]n individual leaving the employ of one entity for an at-will position with another should understand that he has no guarantee that he will be permitted to commence employment.")

Therefore, even if Wride meant to include in the alleged "employment contract" all of the alleged statements of Wells Fargo employees mentioned in the Complaint, none of these statements provided any definite promise to keep Wride in either the HMC or Specialist position for a certain period of time or restricted Wells Fargo's ability to terminate him from either position or to rescind an offer to allow him to return to the Specialist position.  Under such circumstances, any action taken by Wells Fargo to remove him from the HMC position or any failure to allow him to return to his Specialist position could not have been a breach of contract because Wells Fargo's legal right to remove Wride "for any reason, or no reason at all, at any

time" would have been a presumption of any alleged employment contract.  *Ryan*, 972 P.2d at 400.

### III.   WRIDE'S IMPLIED COVENANT CLAIM ALSO FAILS BECAUSE THE IMPLIED COVENANT ALONE CANNOT OVERCOME THE AT-WILL PRESUMPTION.

In support of his claim for breach of the implied covenant of good faith and fair dealing, Wride alleges that Wells Fargo "breached this covenant by failing to deal with Plaintiff in good faith."  As with the breach of contract claim, this leaves Wells Fargo and the Court to speculate exactly what action Wells Fargo took in bad faith to breach this covenant, since he alleges no specific behavior.  (Compl. ¶ 81.)  However, taking from the Complaint all the alleged statements of Wells Fargo employees to Wride, as well as Wells Fargo's actions in removing Wride from the HMS position and not allowing him to return to the Specialist position, none of these alleged statements or actions could have constituted a breach of the covenant of good faith and fair dealing.

As to the statements allegedly made to him by Wells Fargo employees that a background/credit check was not necessary to enter into the HMC job, or that he could return to the Specialist job, Wride nowhere alleges that anyone made any such statement to him in bad faith.  In fact, Wride alleges that it "came as a complete shock to Mr. Wride *and his supervisors*" when they discovered that earlier alleged assurances that Wride would not require a background check were inaccurate.  (Compl. ¶ 34 (emphasis added).)  As for the alleged promise to return Wride to the Specialist position, Wride merely alleges that the Wells Fargo employee who made this promise admitted "he was wrong," but not that the Wells Fargo employee made this assurance in bad faith.  (*Id.* ¶ 58.)  Thus, Wride not only fails to allege these alleged statements

were made in bad faith, he positively asserts that the Wells Fargo employees were just as surprised as he was to learn that federal regulations made their earlier promises. Wride's allegations show that the Wells Fargo employees were dealing with Wride in good faith all the way along.

If, on the other hand, we assume Wride's allegations of bad faith were meant to apply to Wells Fargo's actions in removing him from the HMC position and refusing to return him to the Specialist position, these actions also fail to establish a claim for breach of the implied covenant of good faith and fair dealing. Inherent in any alleged employment contract with Wells Fargo was a presumption that Wride's employment was at-will. Therefore, removing Wride from either the HMC or the Specialist position could not have been a breach of the implied covenant because Wells Fargo had the right to do so. The Utah Supreme Court has specifically held that

> The covenant of good faith . . . cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge. . . .  [I]n the absence of *express* terms limiting the right of an employer to discharge for any or no reason and in the absence of provisions establishing procedures by which a discharge should be effectuated, *it would be inconsistent to hold that an employer, on the basis of the implied covenant of good faith, is bound to a substantive limitation on the employer's right to discharge.*

*Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (emphasis added).

In sum, an implied covenant of good faith and fair dealing "cannot be construed . . . to establish new, independent rights or duties to which the parties did not agree." *Oakwood Vill. L.L.C. v. Albertson's, Inc.*, 2004 UT 101 ¶ 45 (affirming Rule 12(b)(6) dismissal of claim for breach of implied covenant). Wride alleges nowhere in his Complaint that he and Wells Fargo entered into a definite agreement to limit or negate the at-will presumption of any employment contract between them. Thus, any action Wells Fargo took consistent with the at-will

8

presumption did not violate any "independent right" to maintain Wride in his employment, and could not form the basis for claim of breach of the implied covenant.  *Id.*

### IV. WRIDE'S FRAUD CLAIM FAILS BECAUSE HE DOES NOT ALLEGE A PRESENT INTENTION TO DEFRAUD AND ANY ALLEGED REPRESENTATIONS COULD NOT HAVE CAUSED HIM INJURY.

Wride's claim that Wells Fargo defrauded him fails because he does not successfully allege the necessary elements for a fraud claim.  Among the many elements that Wride is required to allege are (a) that any alleged representation "concern[ed] a presently existing material fact"; (b) that he relied on the alleged representation and was thereby induced to act; and (c) that the action he was induced to take caused him "injury and damage."  *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16.

#### A. Wride Does not Adequately Allege That Wells Fargo Had a Present Intent to Defraud Wride.

Although Wride alleges that Wells Fargo "made false representations to [Wride] concerning presently existing facts," the representations he alleges do not actually concern presently existing material facts.  (Compl. ¶ 84.)  Wride alleges that these representations were, first, that Wride would not have to undergo a background/credit check to obtain the HMC job and, second, that Wride could return to the Specialist job.  Both of these alleged representations were not about *presently* existing material facts, since they both concerned future eventualities.  However, Utah law does recognize that promises about the future can fulfill this element of a fraud claim if the promises are made "with a *present intent* not to perform."  *Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985) (emphasis added).

Wride does make a conclusory allegation that Wells Fargo "had no intention of performing on these representations at the time they were made because new financial reform

laws and regulations did not allow Mr. Wride to work as an HMC." (Compl. ¶ 86.) This conclusory allegation, however, is entirely belied by Wride's factual allegations in his Complaint. Even though new financial reform laws and regulations prevented Wride from working as HMC, Wride does not allege or explain how such laws and regulations informed any present intent on the part of Wells Fargo to deceive Wride. Wride does not allege that the Wells Fargo employees who made alleged representations to Wride made those promises "with a present intent not to perform." *Von Hake*, 705 P.2d at 770. He does not allege that the Wells Fargo employees who made the alleged promises were aware of the laws and regulations and intentionally made promises which they knew could not be fulfilled in light of those laws and regulations. To the contrary, as discussed above, Wride alleges that the Wells Fargo employees were "shock[ed]" when they learned that their alleged promises could not be fulfilled. (Compl. ¶¶ 34.) Without an awareness of these regulations at the time the Wells Fargo employees made the alleged representations, the existence of the regulations could not have formed part of the "present intent" of the Wells Fargo employees.

Thus Wride's allegation that Wells Fargo had a present intent not to perform because of these regulations is contradicted by the factual allegations of the Complaint, and does not adequately allege the necessary element of a claim for fraud.

### B.   Wride Does not Allege That Wells Fargo's Alleged Promise That Wride Could Return to His Specialist Job Induced Him to Take Any Action.

A plaintiff must also plead that he relied on the alleged representation and was induced to act thereby. *Armed Forces Ins. Exch.*, 2003 UT 14 ¶ 16. Although Wride alleges two representations made by Wells Fargo, it was only the first representation—that he would not have to undergo a background/credit check—that he alleges induced him to take any action.

Indeed, he alleges that it was that alleged promise which induced him to apply for the HMC

position.  However, the second alleged representation—that he could return to his Specialist

job—did not induce him to take any action since Wride states that this alleged representation was

not made until after he had lost the HMC job.  Thus, any alleged promise that he could return to

the Specialist job could not have induced Wride to apply for the HMC position.

> **C.     As a Matter of Law, Wride's Actions in Reliance on Wells Fargo's Alleged Promises Could Have Caused Him no Injury.**

A final necessary element of a fraud claim is that the plaintiff allege that he was "induced

to act to [his] injury and damage."  *Armed Forces Ins. Exch.*, 2003 UT 14 ¶ 16.  In the context of

a promise of employment,

> damages for fraudulent inducement consist of the losses that are immediately and proximately caused by the fraud.  That is, the employee is entitled to recover the difference between the compensation provided by the employer whom the employee was induced to leave and the compensation that follows.

*Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 57 (internal quotation marks omitted).

Wride's fraud claim fails on this element as well, since Wride was never induced to give

up the HMC job, and it was within Wells Fargo's rights to terminate Wride's employment as a

Specialist at any time, so the loss of this job could not have resulted in cognizable injury to

Wride.

Wride alleges two representations.  As already discussed, only the first—that he would

not have to undergo a background/credit check—induced Wride to give up the Specialist job to

apply for the HMC job.  By the standard stated in *Giusti*, the only injury Wride could claim

would be the difference in compensation between the job he allegedly gave up—the Specialist

job—and whatever compensation he would have earned after leaving Wells Fargo.  He was

never induced to give up the HMC job by any promise of Wells Fargo, so that job does not enter the equation.

Thus, all Wride could possibly claim as injury for Wells Fargo's alleged fraud is the loss of his Specialist job, since that is what he gave up in reliance on the first alleged representation. However, the value of the Specialist job to Wride was inherently qualified by the at-will presumption. In giving up the Specialist job to apply for the HMC job in reliance on alleged representations, Wride was not giving up something to which he had an absolute right, independent of Wells Fargo's influence. In fact, the Specialist job was something that Wells Fargo had the inherent legal right to deprive Wride of "for any reason, or no reason at all, at any time." *Ryan*, 972 P.2d at 400. To claim that Wride was injured because Wells Fargo induced him to give up something that Wells Fargo itself had the right to take away from him "at any time" is logically absurd. On account of the at-will presumption of Utah law, therefore, the loss of the Specialist job was not a cognizable injury induced by any alleged representations of Wells Fargo.

Therefore, since Wride was not induced to leave the HMC position, and since the Specialist position was terminable at-will, his inability to remain in or return to either of these jobs was not a cognizable injury that could have been induced by the representations Wride alleges. Since injury is an essential element of a claim for fraud, a failure as a matter of law to be able to show such injury is fatal to Wride's claim.

**V.   WRIDE'S NEGLIGENT MISREPRESENTATION CLAIM FAILS BECAUSE THE ECONOMIC LOSS RULE PREVENTS RECOVERY OF WAGES FOR NON-INTENTIONAL TORTS.**

Wride's claim for negligent misrepresentation must likewise fail, albeit for a different reason.  Even if Wride is able to allege all the elements for a claim of negligent misrepresentation, he is barred from recovering his purely economic damages on such a claim by the economic loss rule.

Under Utah law, "[t]he economic loss rule prevents a party from claiming economic damages 'in negligence absent physical property damage or bodily injury.'"  *Fennell v. Green*, 2003 UT App 291, ¶ 13 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 32) (holding that economic loss rule prevented recovery for economic damages on claim for negligent misrepresentation).  Lost wages are a classic instance of economic damages—Black's Law Dictionary defines "economic loss" as "[a] monetary loss such as lost wages or lost profits."  9th Ed., 589.  Wride alleges no other damages to himself as a result of Wells Fargo's alleged negligent misrepresentations than his economic damages or lost wages resulting from the loss of his HMC or Specialist job.  As quoted above, *Giusti* states that the measure of damages for fraudulent inducement of employment is lost compensation.  *Giusti*, 2009 UT 2 ¶ 57.  The claim of negligent representation mirrors the elements of fraud in this respect.  *Smith v. Frandsen*, 2004 UT 55, ¶ 9.  He certainly alleges no other damage to his person or property which was caused by any alleged representations of Wells Fargo.  Since, therefore, his only claimed damages are economic damages, he cannot recover them on a claim of negligent representation.  As with a claim for fraud, as discussed above, a claim for negligent representation requires an allegation of injury or damages as an essential element of the cause of

action.  *Id.*  Since the economic loss rule bars recovery for any of the damages Wride is claiming

here, he fails to meet this essential element and this claim should be dismissed.

## VI.    WRIDE'S PROMISSORY ESTOPPEL CLAIM FAILS BECAUSE HE DOES NOT ALLEGE THAT WELLS FARGO MADE A PROMISE OF CONTINUED EMPLOYMENT SUFFICIENT TO OVERCOME AT-WILL PRESUMPTION.

To make out a claim for promissory estoppel, a plaintiff must, among other things, allege

that he reasonably relied on the alleged promise and that his action resulted in a loss to the

plaintiff.  *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 35.  Because of the at-will

presumption inherent in the employment relationship between Wride and Wells Fargo, Wride's

allegations as to these two elements likewise fail as a matter of law.

As an element of this claim Wride again states that he reasonably relied on Wells Fargo's

alleged promises (1) that he would not have to undergo a background/credit check for the HMC

position and (2) that he could return to the Specialist position.  For the same reasons as discussed

above, Wride cannot recover for these alleged representations because he incurred no legally

cognizable damages as a result.  Of course, Wells Fargo's alleged promises did not cause him to

give up the HMC job—the alleged promises were made before he even had that job and it was

the federal regulations which lost this opportunity for him, not any decision of his.

And again, although he might argue that the alleged promises induced him to apply for

the HMC job which ultimately resulted in Wells Fargo gaining information which caused him to

lose the Specialist job, the fact remains that the Specialist job was subject to the at-will

presumption.  Just as argued above, the loss of a position which Wells Fargo could legally take

away "*for any reason, or no reason at all, at any time*," *Ryan*, 972 P.2d at 400 (emphasis added),

did not constitute a legally cognizable injury to Wride.  Indeed, it was not any alleged promise

that caused Wride to lose the Specialist position, but Wells Fargo's exercise of its rights under the at-will presumption.

In addition to his failure to be able to show any legally cognizable damages for this claim, Utah courts have consistently recognized that any reliance on a promise to remain employed in an at-will position is unreasonable as a matter of law.  *See, e.g., Rose v. Allied Dev. Co.*, 719 P.2d 83 (Utah 1986) (affirming summary judgment and holding that two conversations implying a promise of long-term employment could not form basis of enforceable promise in promissory estoppel claim); *Giusti*, 2009 UT 2 (affirming summary judgment and holding that uncertain contract term was not enough to overcome at-will presumption for breach of contract or promissory estoppel claims); *Weese v. Davis County Comm'n*, 834 P.2d 1 (Utah 1992) (affirming summary judgment and holding that reliance on oral promises that contradicted at-will employment relationship was unreasonable); *but see Anderson v. Larry H. Miller Comms. Corp.*, 2012 UT App 196 (denying summary judgment and holding that there was a genuine factual issue where employee had allegedly been given definite promise of employment for three-year term).

In *Evans v. GTE Health Systems*, the plaintiff was promised a job in Florida.  857 P.2d 974, 975 (Utah Ct. App. 1993).  He stated that his acceptance of the job was contingent on it being a long-term position.  *Id.*  He alleges that the defendant made a series of representations to him that he would be employed long-term, but he lost the job after only two-and-a-half months, after he had given up his old position and while he was in the middle of relocating to Florida with his family.  *Id.* at 975-76.  Notwithstanding his allegations that the defendant promised him a long-term position, the effort that the plaintiff went to for the sake of this job, and the

plaintiff's loss of his previous job, the court found that he did not reasonably rely on the defendant's promises of a long-term position because those alleged promises were not definite enough to overcome the at-will presumption.  *Id.* at 977.

Wride alleges that he lost the Specialist job ultimately because he reasonably relied on an alleged promise that he could return to that job if the HMC position did not work.  However, unlike the plaintiff in *Evans*, Wride makes absolutely no allegation that Wells Fargo promised he could keep the Specialist job for a certain amount of time.  The *Evans* court held that the plaintiff had not alleged sufficiently definite statements to create an implied contract sufficient to overcome the at-will presumption, and dismissed his promissory estoppel claim because it was unreasonable as a matter of law to rely on such indefinite promises in light of the at-will presumption.  Here, Wride does not even allege any such statements at all, let alone indefinite statements.  Merely alleging that Wells Fargo said he could return to his at-will Specialist position is not enough to allege the element that he reasonably relied on a promise of continued employment, because the statement contained no promise of employment for a certain duration. Accordingly, Wride alleges nothing he could reasonably rely on to overcome the at-will presumption inherent in his employment relationship with Wells Fargo, and it was unreasonable as a matter of law for Wride to rely on a promise of continued employment in the Specialist position.

Having failed to properly allege injury caused by reliance on Wells Fargo's alleged promises, and because his reliance was unreasonable as a matter of law, Wride fails to allege two essential elements of a claim for promissory estoppel, and the Court should dismiss this claim.

16

## **CONCLUSION**

For the foregoing reasons, Defendant Wells Fargo, N.A. respectfully requests the Court

to dismiss all of Plaintiff Troy Wride's claims against Defendant.

DATED this 21st day of November, 2014.

RAY QUINNEY & NEBEKER P.C.


/s/ Scott A. Hagen
Scott A. Hagen
Aaron K. Olsen

*Attorneys for Defendant*


1301695